**FILED UNDER RESTRICTION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.    $9,017.69 IN UNITED STATES CURRENCY;

2.    $44,504.00 IN UNITED STATES CURRENCY;

3.    2011 MERCEDES BENZ GL350, VIN: 4JGBF2FEXBA661789;

4.    2014 GMC SIERRA K3500, VIN: 1GT426E80EF190951;

5.    THREE ROLEX WATCHES;

6.    $7,010.00 IN UNITED STATES CURRENCY;

7.    2015 HONDA CRF50FF, SN: LALAE0417F3200506;

8.    2015 HONDA CRF150RF, SN: JH2KE033XFK600349;

9.    POLARIS T15AASFAAC, SN: 57XAASFA1F5104741;

10.    POLARIS RAZR, VIN: 3NSVFE999FF368219;

11.    2015 SPORTSMAN 570 SP, VIN: 4XASHE57XFA648296; and

12.    1990 MAIN STREET, PH2, SARASOTA, FLORIDA;

        Defendants.

_____

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

_____

The United States of America, by and through United States Attorney John F. Walsh and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

## JURISDICTION AND VENUE

1.     The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881, seeking forfeiture of defendant property based upon violations of 21 U.S.C. § 801 *et seq.* This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

2.     Venue is proper under 21 U.S.C. § 881(j) and 28 U.S.C. § 1395, as the defendant property is located, and all acts described herein occurred, in the District of Colorado.

## DEFENDANT PROPERTY

3.     Defendant property is more fully described as:

a.     $9,017.69 in United States Currency, (defendant $9,017.69) seized on January 26, 2016, at 2502 Bijou Street, Colorado Springs, Colorado. Defendant $9,017.69 is currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

b.     $44,504.00 in United States Currency, (defendant $44,504.00) seized on January 26, 2016, at 2320 Twylby Road, Larkspur, Colorado. Defendant $44,504.00 is currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

c.     2011 Mercedes Benz GL350, VIN 4JGBF2FEXBA661789, (defendant 2011 Mercedes) seized on January 27, 2016, at 4300 Kentucky Avenue,

2

Denver, Colorado.  Upon information and belief, defendant 2011 Mercedes is registered in the name of Andrew Poarch.  Defendant 2011 Mercedes is currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

        d.     2014 GMC Sierra K3500, VIN 1GT426E80EF190951, (defendant 2014 GMC) seized on January 26, 2016, at 350 North Union Boulevard, Colorado Springs, Colorado.  Upon information and belief, defendant 2014 GMC is registered in the name of Andrew Clark Poarch.  Defendant 2014 GMC is currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

        e.     Three Rolex Watches, (defendant Rolex Watches) seized on January 26, 2016, at 350 North Union Boulevard, Colorado Springs, Colorado. Defendant Rolex Watches are currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

        f.     $7,010.00 in United States currency, (defendant $7,010.00) seized on January 26, 2016, at 350 North Union Boulevard, Colorado Springs, Colorado. Defendant $7,010.00 is currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

        g.     2015 Honda CRF50FF, LALAE0417F3200506, (defendant 2015 Honda CRF50FF) seized on January 26, 2016, at 2320 Twylby Road, Larkspur, Colorado.  Defendant 2015 Honda CRF50FF is currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

        h.     2015 Honda CRF150RF, JH2KE033XFK600349, (defendant 2015 Honda CRF150RF) seized on January 26, 2016, at 2320 Twylby Road, Larkspur, Colorado, Colorado.  Defendant 2015 Honda CRF150RF is currently being held by the

Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

i.      Polaris T15AASFAAC, 57XAASFA1F5104741, (defendant Polaris T15AASFAAC) seized on January 26, 2016, at 2320 Twylby Road, Larkspur, Colorado, Colorado.  Defendant Polaris T15 is currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

j.      Polaris Razr, 3NSVFE999FF368219, (defendant Polaris Razr) seized on January 26, 2016, at 2320 Twylby Road, Larkspur, Colorado, Colorado. Defendant Polaris Razr is currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

k.      2015 Sportsman 570 SP, 4XASHE57XFA648296, (defendant Sportsman) seized on January 26, 2016, at 2320 Twylby Road, Larkspur, Colorado, Colorado.  Defendant Sportsman is currently being held by the Internal Revenue Service, Criminal Investigation Division in Denver, Colorado.

l.      1990 Main Street, PH2, Sarasota, Florida (defendant 1990 Main Street) which is more fully described as follows:

> Unit 2 of Cityscape at Courthouse Centre, a Condominium according to the Declaration of Condominium thereof, recorded in Official Records Instrument No. 2005085395, of the Public Records of Sarasota County, Florida, and any amendments thereto, together with its undivided share in the common elements.

Defendant 1990 Main Street was purchased on June 10, 2015 and is titled in the name of Andrew Poarch.  Upon information and belief, defendant 1990 Main Street is encumbered by a Mortgage Deed for the benefit of James P. Von Hubertz.

## FACTUAL BASIS FOR FORFEITURE

Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and

investigations of fellow law enforcement officers as reported to me.

## Background

4.      The Lazy Lion, LLC, owned and operated by Andrew Poarch (Poarch), is a members-only smoke club, which is cultivating and distributing marijuana to its members, and is operating without a marijuana license.

5.      The membership agreement claims to assist its members by cultivating marijuana for them.  It further claims to accept reimbursement for the direct and indirect cost of growing marijuana on behalf of its members.

6.      In addition to cultivating marijuana, Poarch and employees of The Lazy Lion produce butane hash oil, which is in violation of both state and Federal law.

## No Marijuana Related Licenses

7.      Colorado Secretary of State records show that The Lazy Lion, LLC was formed by Shuntay Dominique Poarch and lists Andrew Clark Poach as its registered agent.  The principal address for The Lazy Lion, LLC is 2502 East Bijou Street, Colorado Springs, Colorado.

8.      On January 28, 2013, The Lazy Lion filed Articles of Organization.  On February 15, 2013, the Lazy Lion/Andrew Clark Poarch applied for a Colorado Springs Sales Tax License, indicating the business sells "soda + snack, T-shirts."

9.      Shuntay Dominique Poarch, the wife of Andrew Poarch, also operates a business known as The LL Glass Gallery, Inc.  On July 1, 2014, the LL Glass Gallery/Shuntay Poarch applied for a Colorado Springs Sales Tax License, indicating the business sells "Glass Art, T-Shirts, and Snacks."

10.     As part of this investigation, investigators reviewed records from the City of Colorado Springs, County of El Paso Colorado, and the Colorado Department of Revenue's Marijuana Enforcement Division relating to the licensing of a marijuana related business.  No information was found indicating that Andrew Poarch, Shuntay Poarch, nor any employee of The Lazy Lion have applied for or obtained a license to operate a marijuana-related business from the City of Colorado Springs, County of El Paso, Colorado, or the State of Colorado.

11.     The investigation has shown that the LL Glass Gallery, Inc., owned and operated by Shuntay Poarch, reports wages paid to the employees of The Lazy Lion. The LL Glass Gallery has also not applied for or received a license to operate as a marijuana-related business.

12.     The Lazy Lion also has no permit or license to manufacture Butane Hash/Honey Oil (BHO) products.

### Investigation of The Lazy Lion

13.     On June 27, 2014, an individual acting in an undercover capacity (UC) entered The Lazy Lion and paid the initial membership fee of $20.00.  After becoming a member, the UC was allowed access to the remaining rooms in the business by entering through a locked door.  Once inside, the UC purchased approximately 29.95 grams of marijuana.

14.     Between June 27, 2014 and October 8, 2015, the UC received a combined total of approximately 151.47 grams of marijuana from The Lazy Lion.  Each time, the UC provided cash to a Lazy Lion employee in exchange for the marijuana.

15.     During these transactions at The Lazy Lion, the UC observed that the employee behind the counter used an electronic tablet device to look up pricing and to complete the transaction.  When the UC provided cash to the employee, the employee entered the amount in the tablet and a cash register opened.

16.     The UC also noticed that there were two counters, one for the distribution of refined marijuana and the other for the distribution of hash oil.  A notice is also posted near the counters that only cash is accepted, and an Automated Teller Machine (ATM) is located in the front lobby of The Lazy Lion.

17.     According to the UC, The Lazy Lion requires an initial membership fee of $20.00 and then members must pay $5.00 fee each time they visit the club.  Those fees do not include the cost members must pay to receive marijuana or hash oil for consumption at the club or to be taken with them to use elsewhere.

18.     On November 2, 2015, during surveillance of The Lazy Lion, agents observed approximately 28 people enter the club in a 30-minute time frame.  Later, 29 people were seen entering in another 30-minute time frame.

19.     On November 9, 2015, FBI Agents interviewed David Biggs, an Assistant Manager for The Lazy Lion.  Biggs stated that The Lazy Lion is a private members-only marijuana club.  Members must sign a form and show a form of identification.  The Lazy Lion uses a computer tablet to register all of their customers.  Once registered, customers can consume marijuana on the premises or take it elsewhere to consume.

20.     On November 10, 2015, an FBI Confidential Source (CS) entered The Lazy Lion, and joined by completing the membership form and paying the $20.00

membership fee.  The CS attempted to obtain a copy of the form, but was not allowed to keep a copy.

### Interviews with Employees of The Lazy Lion/Poarch

21.     On November 9, 2015, FBI agents interviewed Eric Wiley (Wiley) and Tyler Cox (Cox), two employees associated with the grow operations of The Lazy Lion, near the warehouses located at 3509, 3511, 3515, and 3519 East Saint Vrain Street, Colorado Springs, Colorado.

22.     During the interview, Wiley and Cox stated that they work for The Lazy Lion.  They stated that the warehouses contain more than 1,200 marijuana plants in various stages of cultivation.  They also stated they are growing more than 40 different strains of marijuana.  The marijuana grown at the warehouses is then supplied to The Lazy Lion.

23.     Wiley and Cox explained that tablet computers are used to operate the complex irrigation system to ensure the optimum environment for the marijuana plants. They discussed that The Lazy Lion has been in business for the past three years and distributes recreational marijuana, not medicinal marijuana, because medicinal marijuana is regulated.

24.     On February 5, 2016, FBI and IRS agents interviewed William Stampfle, who stated he had been employed by Poarch and The Lazy Lion for approximately four to six months and oversaw the grow operation at the warehouse for The Lazy Lion. Stampfle also stated that prior to moving to Colorado he operated a marijuana grow in Florida.  Stampfle is paid $1,500.00 a month in cash by Poarch.

25.   Stampfle stated that the warehouses produce marijuana that is harvested every eight weeks.  There are five flowering rooms and each room is at a different stage of development.  Once the marijuana is harvested, a team of trimmers are employed to prepare the marijuana to be sold.  Poarch or his manager would then pick up the final product.

## Information from Social Media and the Internet

### Lazy Lion Website

26.   The Lazy Lion maintains a website at http://www.thelazylion420.com.  The Lazy Lion is advertised as a private members club and recreational DAB bar.  DAB is a term used to describe butane honey oil containing tetrahydrocannabinols (THC) extract which is smoked or ingested.  The website previously listed prices for different strains of marijuana distributed in one gram, 1/8 ounce, 1/4 ounce, 1/2 ounce, and one ounce weights.

### Andrew Poarch's Instagram Account

27.   Poarch maintains an Instagram account identified as "the_lion_of_710street."  The account contains photographs of Poarch, who describes himself as the CEO of the Lazy Lion.  Several of these photographs show Poarch using what appears, to be marijuana and marijuana/hash products, marijuana cultivation operations, marijuana and marijuana/hash products, and the possession and use of multiple firearms.

28.   The account also contained photographs of marijuana in various forms, BHO products, BHO manufacturing equipment, firearms, and indicia of travel to states including Massachusetts, Nevada, and California.

29.     On July 8, 2014, a conversation between Poarch and a user identified as "ayuiwowjsnjd" discussed the ability of the user to purchase "errl" from Poarch, which is a term used to refer to BHO products.  The user asked if Poarch would be back in Florida anytime soon so the user could purchase errl.  Poarch responded, "…I'll be in Florida from the 21 st to the 27 th of this month and I'll have plenty of Errl if u want any…"

30.     On September 24, 2015, another user, "kyleahola," indicated that he was in Boston, Massachusetts and complained to Poarch about poor quality BHO that he had received.  The user stated that he was a huge fan of the Lazy Lion and smokes nothing but "oil" from the Lazy Lion, but that the most recent batch was "unacceptable." The user also sent Poarch a photograph, presumably of a BHO product, along with the complaint.

**Andrew Poarch's Facebook Account**

31.     Poarch also maintains a Facebook account, https://www.facebook.com/andrew.poarch.7.  This account contains a photograph of Poarch, who lists himself as the owner/president of the Lazy Lion with a link to The Lazy Lion webpage.  This account also contains photographs of Poarch, photographs of suspected marijuana in various forms, and photographs of BHO products.

**January 26, 2016 Execution of Search Warrants**

**2502 East Bijou Street, Colorado Springs, Colorado (The Lazy Lion)**

32.     On January 26, 2016, a search warrant was executed at 2502 East Bijou Street, Colorado Springs, Colorado where The Lazy Lion is located.

33.     During the search, defendant $9,017.69 was seized along with 344 marijuana plants, 6.9 pounds of processed marijuana, 6.07 pounds of butane hash oil, 7.95 pounds of marijuana edibles, and 69.8 grams of marijuana cigarettes located throughout the club.

**Warehouses at 3509, 3511, 3515, and 3519**
**East Saint Vrain Street, Colorado Springs, Colorado**

34.     On January 26, 2016, a search warrant was executed for 3509, 3511, 3515, and 3519 Saint Vrain Street, Colorado Springs, Colorado, which are the warehouses associated with The Lazy Lion and Andrew Poarch.

35.     The warehouses located at 3509 and 3511 East Saint Vrain are two units that have been combined as one space.  During the search of 3509 and 3511, 619 marijuana plants and marijuana grow equipment were seized.

36.     During the search of the warehouse at 3515 East Saint Vrain, 947 marijuana plants, marijuana grow equipment, and 18.9 pounds of processed marijuana were seized.

37.     During the search of the warehouse at 3519 East Saint Vrain, 462 marijuana plants and marijuana grow equipment were seized.

**2320 Twylby Road, Larkspur**

38.     On January 26, 2016, a search warrant was executed at 2320 Twylby Road, Larkspur, Colorado, the residence of Andrew and Shuntay Poarch.

39.     Poarch arrived with the agents and told them that he was the founder/owner of The Lazy Lion.  Poarch also stated that The Lazy Lion was formed in 2013 and has been highly profitable.

40.     Poarch stated that The Lazy Lion has approximately 30 employees, most of which are longtime associates and friends from Sarasota, Florida.  Poarch also stated that The Lazy Lion provides an ounce of marijuana for $280.00 - $400.00 and an ounce of BHO for $900.00 - $2,800.00.  The Lazy Lion grows, cultivates, and processes all of the marijuana, BHO, edibles, and other products distributed from the retail store. Poarch stated that he does not purchase marijuana from other growers and has developed his own system for extracting BHO.

41.     Poarch told the agents that The Lazy Lion has approximately 40 pounds of cultivated dried marijuana and four pounds of BHO in stock, valued at approximately $500,000.00.  Poarch estimated that The Lazy Lion generates $10,000.00 - $15,000.00 daily or $3,500,000.00 annually.  Poarch stated that he invests his earnings or keeps the cash at Twylby because he is unable to deposit the cash in banks due to the marijuana banking regulations.

42.     Poarch stated he invests in high-end vehicles, off-road vehicles, Rolex watches and real estate, which included his residence at Twylby Road.  Poarch stated that he has placed a $100,000.00 down payment and is on a payment plan to completely pay for his residence at Twylby Road in five years.

43.     During the search, defendant $44,504.00 in United States currency was seized along with 77.5 pounds of processed marijuana, 5.3 pounds of butane hash oil, and assorted butane hash oil lab equipment located throughout the guest house and residence.

## FINANCIAL INVESTIGATION

### The Lazy Lion's Point of Sale System

44.     The Lazy Lion uses a Point of Sale (POS) system that reports cash receipts totals for the business.

45.     Emails generated by the Lazy Lion's Point of Sale System to Poarch showed that The Lazy Lion cumulatively made approximately $2,628,854.00 cash receipts between June 9, 2014, and December 28, 2014.

46.     An email from the Point of Sale System further showed that between December 28, 2014, and August 2, 2015, The Lazy Lion cumulatively made approximately $3,022,510.00 in cash receipts.

### Reported Income to the IRS

#### The Lazy Lion

47.     In 2013, on its business tax return, The Lazy Lion reported gross receipts of $51,924.00, total expenses of $51,589.00, and ordinary business income of $335.

48.     Between January 1, 2014 and October 1, 2014, on its business tax return, The Lazy Lion reported gross receipts of $67,653.00, total expenses of $61,737.00, and ordinary business income of $5,916.00.

49.     The Lazy Lion reported paying 14 employees $41,228.01 during the first and second quarter of 2014 and no wages since.

50.     The Lazy Lion reported to the IRS that it ceased operations in October of 2014.

**The LL Glass Gallery, Inc.**

51.     The LL Glass Gallery reported to the IRS that it opened as a business in July of 2014.

52.     Between July 1, 2014 and December 31, 2014, on its business tax return, the LL Glass Gallery reported gross receipts of $104,800.00, total expenses of $104,722.00, and ordinary business income of $78.

53.     The LL Glass Gallery, Inc. reported paying 13 employees $52,133.29 during the first and second quarter of 2015.  These employees appear to be employees of The Lazy Lion.

**Andrew and Shuntay Poarch**

54.     The majority of the income reported in 2013 and 2014 for Andrew and Shuntay Poarch was from the LL Glass Gallery or The Lazy Lion.

55.     In 2013, Andrew and Shuntay Poarch had reported income from The Lazy Lion of only $355.

56.     In 2014, Andrew and Shuntay Poarch had reported wages of $19,294.00, $10,000.00 from LL Glass Gallery, $3,300.00 in wages from The Lazy Lion, and 5,994.00 in business income from The Lazy Lion and LL Glass Gallery.

### Financial Records

**Chase Bank Account 703235700**

57.     Chase Bank Account 703235700 (Chase account 5700) was opened on March 30, 2015 in the name of Andrew Clark Poarch.  Andrew Poarch is the sole signer on this account.

58.     Between March 30, 2015, and October 6, 2015, Andrew Poarch deposited approximately $242,077.10 into Chase account 5700.  Approximately $65,960.00 was cash deposits and an additional $112,460.00 was from Columbus Data Services (CDS), the Automated Teller Machine (ATM) payment processing company used for the reimbursements of the cash withdrawn from the ATM located inside the Lazy Lion.

59.     Because the Lazy Lion only accepts cash payments, the ATM allows customers to withdraw cash from their bank accounts for purchases at the Lazy Lion. Moreover, because Lazy Lion/Poarch is receiving reimbursement for the ATM funds withdrawn from this ATM, it is believe that the ATM is owned and serviced by Lazy Lion/Poarch, including supplying the ATM with currency to disburse.

**Chase Bank Account 705135528**

60.     Chase Bank Account # 705135528 (Chase account 5528) was opened on April 2, 2015, in the name of Shuntay Dominique Poarch.  Shuntay Poarch is the sole signer of this account.

61.     Between the dates of April 2, 2015, and October 14, 2015, Shuntay Poarch deposited approximately $81,058.46 into Chase account 5528.  Approximately $78,297.00 was cash deposits.

## DEFENDANT VEHICLES

**2011 Mercedes Benz GL350**

62.     On June 9, 2015, Poarch purchased defendant 2011 Mercedes in Sarasota, Florida.  Poarch withdrew $37,000.00 from Chase account 5700 on June 9, 2015 in the form of a cashier's check to purchase defendant 2011 Mercedes.

**2014 GMC Sierra K3500**

63.     On May 12, 2014, Andrew Poarch purchased defendant 2014 GMC from Mike Shaw Buick GMC for approximately $64,306.20.  Poarch made a cash down payment of approximately $19,250.00 at the time of purchase, and a trade-in valued at $5,000.00.  The remaining balance of $40,347.21 was financed by Ally Financial for a period 60 months.

64.     Between April 2, 2015 and October 14, 2015, approximately $6,035.88 was paid to Ally Financial from Chase account 5528.

**Defendants Rolex Watches and $7,010.00**

65.     On January 26, 2016, agents executed a federal seizure warrant for defendant 2014 GMC.  During the search of defendant 2014 GMC, agents found defendant Rolex Watches and defendant $7,010.00 inside defendant 2014 GMC and seized these assets as well.

## Purchases from Rocky Mountain Cycle

66.     On November 13, 2015, a FBI agent interviewed an employee of Rocky Mountain Cycle Plaza in Colorado Springs, Colorado.  During that interview, the employee stated that she knew Poarch was in the marijuana business, and has purchased multiple dirt bikes, all-terrain vehicles, and other items from the dealership. Additionally, the employee stated that Poarch would bring a backpack full of cash to finalize the transactions.

**2015 Honda CRF50FF**

67.     On December 24, 2014, Poarch purchased defendant 2015 Honda CRF50FF, along with a 2014 Honda TRX.  The total purchase price for the two items was approximately $4,740.87, and was paid in cash.

**2015 Honda CRF150RF**

68.     Information from Rocky Mountain Cycle Plaza showed that on March 5, 2015, Poarch purchased defendant 2015 Honda CRF150RF.  The total purchase price was approximately $5,465.73, and was paid for in cash.

**Polaris T15AASFAAC**

69.     On April 22, 2015, Poarch purchased defendant Polaris T15AASFAAC. The total purchase price was approximately $23,009.01 and was paid for in cash.

**Purchases from Pikes Peak Polaris**

70.     On November 17, 2015, the FBI interviewed the owner of Pikes Peak Polaris in Woodland Park, Colorado.  During that interview, the owner stated that Andrew Poarch was financially responsible for two cash transactions at the dealership.

71.     The owner also stated that on both occasions at Pikes Peak Polaris, Poarch had in his possession a brown leather bag that contained a significant amount of cash banded in $1,000.00 increments.  The cash was in denominations including $1, $5, $10, $20, and $100 bills.  The money had a strong odor of what the owner of the dealership recognized as similar to marijuana.  Additionally, Poarch stated to the owner that he moved here from Florida because the marijuana laws were looser in Colorado.

**Polaris Razr**

72.     On October 18, 2014, Poarch purchased defendant Polaris Razr from Pikes Peak Polaris for approximately $23,000.00 in cash.  According to the owner of Pikes Peak Polaris, when Poarch took approximately twenty-three bundles of cash from the brown leather bag, the bag still appeared to be full of money.

73.     Andrew Poarch has photos on his social media accounts showing him operating a vehicle that matches the description of defendant Polaris Razr.

**2015 Sportsman 570 SP**

74.     On January 22, 2015, Poarch purchased defendant 2015 Sportsman from Pikes Peak Polaris for approximately $9,858.37 in cash for defendant 2015 Sportsman.

## Purchases of Real Property

**1990 Main Street, PH2, Sarasota, Florida**

75.     On June 10, 2015, Poarch purchased defendant 1990 Main Street, PH2, Sarasota, Florida.  On June 5, 2015, a cashier's check for approximately $170,000.00 was remitted as a down payment towards the purchase of defendant 1990 Main Street. In addition, a wire transfer from Chase account 5700 in the amount of $5,424.87 was made to Fidelity National Title.

## CONCLUSION

76.     In summary, there is reasonable cause to believe that Andrew Poarch is cultivating and distributing marijuana through his business, The Lazy Lion, without any marijuana licensing.  The defendant assets are, therefore, forfeitable as proceeds traceable to the illegal cultivation and distribution of marijuana pursuant to 21 U.S.C. § 881(a)(6).

## VERIFICATION OF MATTHEW GARTH

## SPECIAL AGENT, INTERNAL REVENUE SERVICE - CRIMINAL INVESTIGATION

I, Special Agent, Matthew Garth, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

Matthew Garth
Special Agent – IRS-CI

STATE OF COLORADO      )
                       ) ss
COUNTY OF DENVER       )

The foregoing was acknowledged before me this 25th day of March 2016 by Matthew Garth, Special Agent, Internal Revenue Service – Criminal Investigation.

> PAMELA D. THOMPSON
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20064017152
> MY COMMISSION EXPIRES MAY 3, 2018

Notary Public - Colorado
My Commission Expires: 5/3/18

## FIRST CLAIM FOR RELIEF

80.    The Plaintiff repeats and incorporates by reference the paragraphs above.

81.    By the foregoing and other acts, defendant $9,017.69 constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

82.    The Plaintiff repeats and incorporates by reference the paragraphs above.

83.     By the foregoing and other acts, defendant $44,504.00 constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

### THIRD CLAIM FOR RELIEF

84.     The Plaintiff repeats and incorporates by reference the paragraphs above.

85.     By the foregoing and other acts, defendant 2011 Mercedes constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

### FOURTH CLAIM FOR RELIEF

86.     The Plaintiff repeats and incorporates by reference the paragraphs above.

87.     By the foregoing and other acts, defendant 2014 GMC constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

### FIFTH CLAIM FOR RELIEF

88.     The Plaintiff repeats and incorporates by reference the paragraphs above.

89.     By the foregoing and other acts, defendant 2015 Rolex Watches constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

### SIXTH CLAIM FOR RELIEF

90.     The Plaintiff repeats and incorporates by reference the paragraphs above.

91.     By the foregoing and other acts, defendant $7,010.00 constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SEVENTH CLAIM FOR RELIEF

92.     The Plaintiff repeats and incorporates by reference paragraphs above.

93.     By the foregoing and other acts, 2015 Honda CRF50FF constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## EIGHTH CLAIM FOR RELIEF

94.     The Plaintiff repeats and incorporates by reference the paragraphs above.

95.     By the foregoing and other acts, defendant 2015 Honda CRF150RF constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

## NINETH CLAIM FOR RELIEF

96.     The Plaintiff repeats and incorporates by reference the paragraphs above.

97.     By the foregoing and other acts, defendant Polaris T15AASFAAC constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

### TENTH CLAIM FOR RELIEF

98.     The Plaintiff repeats and incorporates by reference the paragraphs above.

99.     By the foregoing and other acts, defendant Polaris Razr constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

### ELEVENTH CLAIM FOR RELIEF

100.    The Plaintiff repeats and incorporates by reference the paragraphs above.

101.    By the foregoing and other acts, defendant 2015 Sportsman constitutes proceeds traceable to an exchange of controlled substances, in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

### TWELFTH CLAIM FOR RELIEF

102.    The Plaintiff repeats and incorporates by reference the paragraphs above.

103.    By the foregoing and other acts, defendant 1990 Main Street constitutes or was derived from proceeds traceable to a controlled substance in violation of 21 U.S.C. § 801, et seq., and therefore, is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant property in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the

Court enter a finding of probable cause for the seizure of the defendant property and

issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.


DATED this 25th day of March, 2016.


                              Respectfully submitted,
                              JOHN F. WALSH

                              United States Attorney

                    By:_____

                              Tonya S. Andrews
                              Assistant United States Attorney
                              1225 Seventeenth Street, Ste. 700
                              Denver, Colorado 80202
                              Telephone: (303) 454-0100
                              Fax: (303) 454-0402
                              E-mail: tonya.andrews@usdoj.gov
                              *Attorney for Plaintiff*